from the conduct of the parties that a full settlement was made at the time the business was turned over to the new firm of Blauvelt & Co.

There are many exceptions taken, but none of sufficient merit to reverse the judgment.

The result is just and the judgment must be affirmed, with costs.

DYKMAN, J., concurred.

BARNARD, P. J. (dissenting):

The facts are not disputed. The defendant and James H. Blauvelt were partners in business at Nyack, Rockland county, as insurance agents. The firm failed, owing the plaintiff a considerable sum for premiums collected. The wife of Blauvelt applied to the plaintiff to become its agent, and agreed, in consideration of being appointed, to pay the firm debt. The company agreed to and did appoint her agent. She paid a portion of the debt in cash and gave her note for the remainder, which she has not paid. The firm had no connection with the transaction, and there was no agreement even that the wife's note should be accepted in satisfaction of the firm's debt. The referee, on these facts, erroneously found that the firm debt was paid by the unpaid note. There was no payment, probably not even so far as the cash payment, by the wife. The debt was not discharged. (*Madison Square Bank* v. *Pierce*, 137 N. Y. 444.)

The judgment should be reversed and a new trial granted, costs to abide event.

Judgment affirmed, with costs.

---

In the Matter of the Application of JOHN P. ADAMS, as Commissioner of City Works, etc., to Acquire Lands for Street Purposes.

*Condemnation proceedings — valuation of the title of an individual to a street subject to the easements of abutting owners.*

Where the title to land proposed to be taken for a public street is in an individual, subject to the easements of passage of the abutting owners, in condemning the street for public use the valuation by commissioners of such individual's interest therein at a nominal sum is proper.

APPEAL by the petitioner, John P. Adams, as commissioner of city works of the city of Brooklyn, from an order made at the

Kings County Special Term and entered in the office of the clerk of the county of Kings on the 4th day of October, 1892, denying a motion to confirm the report of the commissioners of estimate.

*Almet C. Jenks*, for the petitioner, appellant.

*James C. Bergen*, for the respondent.

BARNARD, P. J.:

Upon the application of John P. Adams, commissioner of city works, three appraisers were appointed to assess the value of "all the land lying between Third and Fourth avenues in Fifty-first street as the same is laid down on the commissioners' map of the city of Brooklyn." The land was the property of Thomas Hunt in his lifetime and was needed for the public use. The commissioners of appraisal reported the value of the land to be six cents. The court at Special Term refused to confirm the report upon the ground that the damages were substantial, and this appeal brings up the question of the value for the purpose of condemnation to public use. The proof shows that the premises in question were known as Fifty-first street on a map made and filed by Thomas Hunt's executors, and lie between Third and Fourth avenues. The map shows a certificate indorsed thereon by the executors that the streets and avenues designated therein were solely for the purpose of descriptions and references, and that there was no intention to dedicate the lands to public use as streets of the city or to any public use. The executors sold lots on the street expressly stating in the deed that the conveyance was of the street up to the center line. The commissioners' valuation was right. The grantees in the deed, each and every of them, own to the center of the street in front of the lots, with a right to have the entire street remain open forever for their free passage. This would be their right over such parts of the street as were unconveyed by executors. The only difference between this condition of things and what would exist on a full dedication of the street is simply this: The owner and all the lot owners could shut up the street, which they could not do on a public street. This contingency is so remote in a great city that the appraisal commissioners did right in disregarding its probability or even possibility. The street was made to be open and always open after lots were sold on

it, and the value of the fee of a public highway is only nominal. (*Trustee, etc., v. Cowen,* 4 Paige, 510; *Bissell* v. *N. Y. Central,* 23 N. Y. 61; *Wiggins* v. *McCleary,* 49 id. 346.)

The order refusing to confirm award is, therefore, reversed, with costs and disbursements, and the report confirmed.

PRATT, J., concurred; DYKMAN, J., not sitting.

Order setting aside report of commissioners reversed, with costs and disbursements, and report confirmed.

---

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN F. DOBSON, to Compel the FIRE COMMISSIONERS OF THE CITY OF BROOKLYN to Fix His Salary, etc.

*Brooklyn fire department* — 1892, *chapter* 710.

Chapter 710 of the Laws of 1892 did not repeal the provisions of the charter of the city of Brooklyn in relation to the salaries of the members of its fire department.

APPEAL by the relator, John F. Dobson, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 5th day of August, 1893, denying his application for a writ of mandamus to compel the fire commissioners of the city of Brooklyn to fix his salary at not more than $2,500 nor less than $1,800 per annum.

*John A. Quintard* and *William P. Pickett,* for the relator.

*Almet F. Jenks,* for the respondent, the People.

BARNARD, P. J.:

The relator is a member of the fire department of the city of Brooklyn. By the charter of the city (Chap. 583, Laws of 1888) the compensation of the relator was provided for. (§§ 5, 6, tit. 13.) In 1892 the Legislature passed this act:

" CHAPTER 710.

"AN ACT in relation to the compensation of the officers of the uniformed force of the fire department in all cities of the State