MARY A. WOOTTON and HENRY J. DYNES

*v.* ·

MICHAEL SELTZER et al.

[Submitted January 6th, 1914.   Determined May 8th, 1914.]

1. A sealed agreement, stating a consideration of one dollar and the discontinuance of a litigation pending between the parties, rested upon a sufficient consideration to support the restrictive covenants therein contained, aside from the consideration imported by the seals of the parties.

2. The record of an agreement or covenant relating to building restrictions, and purporting to bind heirs and assignees, afforded notice of its terms to the covenantor's successors in title, and a deed in the chain of title from the covenantor, made subject to such building restrictions as appeared of record, was also notice of such agreement or covenant.

.3. A purchaser of land may enforce against his vendor a covenant of the vendor not to build upon his remaining land, except as specified in the covenant, provided the restriction so imposed does not contravene principles of public policy, and it is not necessary to its enforcement that such a covenant be embodied in or form a part of a deed of conveyance from the covenantor to the covenantee.

4. An agreement or covenant between two property owners to restrict buildings to a certain line, expressly made to bind their heirs and assigns, was enforceable by a purchaser from one party against a purchaser from the other party, with notice of the agreement, it being unnecessary to regard such covenants as creating easements, but the equitable right to enforcement is transferable as a part of the land to which it is attached and enforceable upon the equitable principle of preventing one having knowledge of the just rights of another from defeating such rights.

5. A restrictive covenant of a purchaser for the benefit of remaining land of his vendor is enforceable by a purchaser from the vendor of the land, for the benefit of which the covenant was made, against a purchaser of the restricted land, chargeable with notice of the covenant.

On final hearing on bill for injunction to restrain violation of restrictive building covenants.

*Mr. Harry Wootton,* for the complainant Mary A. Wootton.

*Messrs. Wilson & Carr,* for the complainant Henry J. Dynes.

*Messrs. Bourgeois & Coulomb,* for the defendants.

LEAMING, V. C.

I think it unnecessary to here consider whether complainant is entitled to the relief sought for the protection and enforcement of a general building or development scheme, for I am convinced that complainant is entitled to enforce against defendants the express covenants made by defendants' predecessor in title with complainant's predecessor in title in an agreement dated May 12th, 1899.

On May 12th, 1899, while a suit was pending in this court by the Absequan Hotel Company, complainant's predecessor in title, against James B. Reilly, defendants' predecessor in title, and the common grantor of the respective parties to this present suit, which former suit was to prevent Reilly from erecting buildings at the very spot where the present defendants have, during the pendency of this suit, erected a building, a compromise settlement was made and reduced to writing and executed by the respective parties and acknowledged by them and duly recorded. By that instrument the complainant hotel company allowed the defendant to maintain the buildings then on the controverted twenty-feet strip for a period of one year from that date, and defendant agreed to remove the buildings on one month's notice after the expiration of one year. The agreement, after reciting, among other things, that defendant Reilly had theretofore covenanted with complainant hotel company that the land now in question should not have erected thereon any building nearer than twenty feet from the front property line of St. Charles Place, concluded as follows:

"It being expressly agreed and understood that said covenants and restrictions as hereinabove recited are binding in all things upon the parties hereto, their heirs and assigns, and upon the land and premises hereinabove described."

The terms of this agreement are clear and explicit. It imposes upon Reilly, as owner of the land then owned by him and

now owned by defendants, an obligation to refrain from the erection of any building in disregard of the twenty-feet building line for the protection of which a suit was then pending, and defines the stipulation as binding on the respective parties and their heirs and assigns and upon the land referred to. It was precisely that right for which the suit then pending was brought, and by reason of the engagements made by Reilly in that agreement the then pending suit against Reilly was discontinued and a concession made by the complainant therein (the present complainant's grantor), to the effect that for one year complainant would not disturb the buildings which were then located in violation of the defined building line. The agreement is sealed and the consideration stated in the agreement is "one dollar and the discontinuance of said proceedings." That was clearly a sufficient consideration to support the covenant aside from the consideration imported by the seals of the parties. But by reading the entire agreement it will adequately appear by the recitations that the covenant there made by Reilly to preserve the twenty-feet building line was a re-engagement on his part to faithfully perform an engagement of the same nature which he had theretofore made with the complainant hotel company, or in behalf of complainant's land, at the time he had conveyed to the complainant hotel company lands on the same street. These prior engagements of Reilly, as recited in the agreement, do not purport to be in the exact language contained in the prior deed from Reilly to the complainant hotel company. But, in the deed to the complainant hotel company, following the covenant touching the twenty-feet building line, the following language appears:

"It being the purpose of this restriction to preserve an open space for view and air of twenty feet in width between the northerly line of the land above described and the Atlantic ocean,"

and in a prior deed made to Wootton Reilly had expressly covenanted to insert a covenant protecting the building line in all subsequent deeds made by him. It thus appears that while the deed to the complainant hotel company contained no clause wherein Reilly *expressly* covenanted to insert similar covenants in all subsequent deeds, it did contain a clause stating that the

twenty-feet open strip was to extend to the ocean. The restatement of the original covenants in the agreement of 1899 may therefore be appropriately regarded as a statement of their substance as the parties originally intended and understood them, and they thus appear to be a reasonably accurate statement of them as they existed in the deed from Reilly to the complainant hotel company. If any doubt could be said to have theretofore existed as to whether the clause in the deed from Reilly to the hotel company which declared the purpose of the restriction to be to preserve the open space twenty feet wide to the ocean was an engagement upon the part of Reilly to keep it open, that doubt was fully removed by the terms of the agreement of 1899.

The present complainant is now the owner of the land which was owned by the complainant hotel company in the former suit, this bill having been heretofore dismissed as to complainant Wootton. The present defendants are now the owners of the very land to which the agreement of 1899 related, and its record has afforded them with notice of its terms. It also appears that one of the deeds in the chain of title from Reilly to defendants contains the following: "Subject to * * * such boardwalk and park easements and building restrictions as appear of record." This recitation also charges defendants with notice of the covenants in the agreement of Reilly already referred to.

There appears to be no doubt of the right of a vendee of land to enforce against his vendor a covenant of the vendor that he will not build upon his remaining land except in a manner specified in the covenant, providing the building restriction thus imposed is not of a nature to contravene principles of public policy. *Brewer* v. *Marshall, 19 N. J. Eq. 537.* Nor does it seem essential to the enforcement of such a covenant that it be embodied in or form a part of a deed of conveyance from the covenantor to the covenantee. *Kirkpatrick* v. *Peshine, 24 N. J. Eq. 206.* And no satisfactory reason can be assigned why a mutual agreement between two property owners on a given street for the purpose of establishing or maintaining a building line wherein the parties engage to bind themselves and their land to the observance of the building line should not be enforceable in a court of

equity against either at the instance of the other. And when such agreements are expressly made to bind the parties and their heirs and assigns the equitable right to the enforcement of the agreement by a purchaser from one party against a purchaser from the other party with notice of the agreement would necessarily exist. It is unnecessary to regard such covenants as creative of easements; the equitable right to enforce the covenant is transferable as a part of the land to which it is attached (*Coudert* v. *Sayre, 46 N. J. Eq. 386, 393, 395*) and may be enforced upon the equitable principle of preventing one having knowledge of the just rights of another from defeating such rights. *Brewer* v. *Marshall, 19 N. J. Eq. 537, 543; Nicoll* v. *Flenning, L. R. 19 Ch. Div. 258, 266.*

There can be little, if any, difference in principle between a restrictive covenant made by a vendee for the benefit of remaining land of his vendor, and one made by a vendor touching his remaining land for the benefit of his vendee. Both are held to be enforceable by a purchaser of the land for the benefit of which the covenant has been made against a purchaser of the restricted land who is chargeable with notice of the covenant. As to the former class see *Coudert* v. *Sayre, 46 N. J. Eq. 386;* DeGrey v. *Monmouth Beach, 50 N. J. Eq. 329; Hayes* v. *Waverley and Passaic Railroad Co., 51 N. J. Eq. 345, 348; Roberts* v. *Scull, 58 N. J. Eq. 396; Hemsley* v. *Marlborough Hotel Co., 62 N. J. Eq. 164; S. C. affirmed, 63 N. J. Eq. 804; McNichol* v. *Townsend, 73 N. J. Eq. 276; Bowen* v. *Smith, 76 N. J. Eq. 456; Sailer* v. *Podolski, 82 N. J. Eq. 459.* As to the latter class see *Brewer* v. *Marshall, 19 N. J. Eq. 537; Coudert* v. *Sayre, supra* (at *p. 391*) ; *Kirkpatrick* v. *Peshine, 24 N. J. Eq. 206* (an agreement by a vendor with his vendee made after sale of the land) ; *Leaver* v. *Gorman, 73 N. J. Eq. 129, 131; Hyman* v. *Tash, 71 Atl. Rep. 742, 744; Watertown* v. *Cowen, 4 Paige Ch. 510; Mann* v. *Stephens, 15 Sim. 377.*

· It is urged that complainant has violated the covenant by at times placing screens under the porch of his building and thereby obstructing the view over the twenty-feet building line, and cannot, in consequence, be heard to complain of defendants' viola-

tion of the covenant. I am unable to find that the covenant has been violated by complainant.

An application of complainant for a preliminary injunction on the present bill was refused; but in the opinion then filed it was stated that should defendants erect their proposed building on the restricted territory during the pendency of the suit, they would do so at their peril, and the bill could, in such event, command mandatory relief if sustained at final hearing. The building has, notwithstanding, been erected pending the suit, and I will, accordingly, advise a mandatory injunction for the removal of such parts of the building as have been erected within twenty feet of the property line of St. Charles Place. Only porches and bay windows constructed in accordance with the provisions of the restrictive covenant can be permitted within the restricted territory.